## Hiram Blow Stave Company's Trustee v. Paducah Cooperage Company.

(Decided May 13, 1914.)

### Appeal from McCracken Circuit Court.

Assignments—Accepted Draft—Action Upon By One Claiming To Be an Assignee—Declarations of Payee After Date of Assign-

ment—When Competent as Evidence.—While admissions made by
the holder of a negotiable instrument before it is transferred
are competent as evidence against one claiming to hold it as
assignee, declarations by the former owner, made after its trans-
fer by him and while in the possession of one claiming to be
the assignee thereof, are ordinarily incompetent  as evidence
against the latter; but this rule does not apply where, in a suit
upon the instrument by the latter the defense interposed by the
payor is that the instrument was never in fact transferred to
the assignee but fraudulently assigned him, in such case it is
competent for the payor to prove that in a settlement made by
him with the original owner of the instrument after the date of
its pretended assignment, the latter was in possession thereof
and claiming to be the owner and that in such settlement the
instrument was charged to and paid by the payor.

CAMPBELL & CAMPBELL and J. D. MOCQUOT for appellant.

BERRY & GRASSHAM for appellee.

OPINION OF THE COURT BY JUDGE SETTLE—Affirming.

Prior to November 29, 1911, the Hiram Blow Stave
Company, a Tennessee corporation, was engaged for
several years in the manufacture and sale of staves in
that state, its chief office being in the city of Nashville.
At the same time there was doing business in the same
State a co-partnership, styled Hiram Blow & Company,
V. J. Blow being a member of the firm and also a lead-
ing stockholder in and officer of the Hiram Blow Stave
Company. The corporation and co-partnership occupied
the same office and were both under the same manage-
ment. The firm, Hiram Blow & Company, had large
business dealings in Tennessee and other states in staves,
stave timber and equipment. In the fall of 1911 both the
corporation and co partnership became insolvent and
were thrown into bankruptcy. The Hiram Blow Stave
Company was adjudged a bankrupt in a Federal court
of Tennessee on the 29th day of November, 1911, and
the firm, Hiram Blow & Company, was adjudged a bank-
rupt in the same court on the 23rd of December, 1911.
William L. Tally was elected trustee in bankruptcy of
the Hiram Blow Stave Company, and H. B. Carter, J.
T. Howell and John Early trustees in bankruptcy of
Hiram Blow & Company.

Prior to the bankruptcy of Hiram Blow & Company
it had large dealings with the appellee, Paducah Coop-
erage Company, a Kentucky corporation engaged in the
stave and timber business in the city of Paducah, and

at the time it went into bankruptcy held large claims against the latter. One of the obligations of the Paducah Cooperage Company to Hiram Blow & Company was a draft of $902.30, dated September 22, 1911, and due ninety days thereafter. On the sixth day of March, 1913, the appellant, William L. Tally, trustee in bankruptcy of the Hiram Blow Stave Company, brought suit upon this draft against the appellee, Paducah Cooperage Company, in the McCracken circuit court; alleging in the petition that the Hiram Blow Stave Company, at the time of filing its petition in bankruptcy and of being adjudged a bankrupt, was the owner and in possession of the draft under and by virtue of a sale and assignment thereof, made to it by Hiram Blow and Company, September 22, 1911, and that thereafter the draft, with other assets of the Hiram Blow Stave Company, went into the hands of the appellant Tally, its trustee in bankruptcy. The prayer of the petition asked judgment against the Paducah Cooperage Company for the amount of the draft with interest from its date and the costs of the action.

The answer of the appellee, Paducah Cooperage Company, denied that the Hiram Blow Stave Company had ever been the owner or holder of the draft or that it had been assigned to it by Hiram Blow & Comapny; and also denied that the appellant, Tally, as trustee in bankruptcy of the Hiram Blow Stave Company, was entitled to recover of it the amount of the draft or any part thereof. It was further alleged in the answer that on January 26, 1912, the appellee, through its manager, W. F. Paxton, made with Hiram Blow & Company, through its trustees in bankruptcy, a full and complete settlement of all matters of account between appellee and Hiram Blow & Company, in which settlement appellee compromised with and paid to the trustees in bankruptcy of Hiram Blow & Company its entire indebtedness to them; that the draft of $902.30 in controversy was one of the items of indebtedness included in the settlement and then paid by appellee, which draft was then produced by and was in the possession of the trustees in bankruptcy of Hiram Blow & Company as an asset of the bankrupt estate, but through mistake or oversight it was left by appellee in the possession of the trustees in bankruptcy of Hiram Blow & Company. Further averments of the answer as to the subsequent possession of the draft by the appellant, Tally, trustee in bank-

ruptcy of the Hiram Blow Stave Company, will better appear from the following excerpt copied therefrom:

"Defendant further states that after this settlement was had between this defendant and the trustees of Hiram Blow & Company, in which settlement this draft was paid and satisfied, the said trustees of Hiram Blow & Company fraudulently and without consideration of any kind paid to them or paid to anybody by the Hiram Blow Stave Company, procured the endorsement by Hiram Blow & Company, by Charles A. McQuay, cashier, over to the Hiram Blow Stave Company, and the said Hiram Blow Stave Company, although now the pretended owner and holder of said draft, never paid to Hiram Blow & Company, or to anybody, anything for said draft, but received same and took same under this fraudulent assignment, and by reason thereof it has no interest in said draft and is not entitled to maintain this action by its trustee in bankruptcy. That at the time said draft was turned over to the Hiram Blow Stave Company and came into its possession, the Hiram Blow Stave Company knew that said draft had been settled in the adjustment of accounts between this defendant and Hiram Blow & Company, and knew that said draft had by mistake or oversight been left in the possession of Hiram Blow & Company."

The affirmative matter of the answer was controverted by reply. Thereafter a jury trial resulted and a verdict was returned in behalf of appellee. But at the same term the circuit court granted appellant a new trial. At a subsequent term a second trial resulted in a verdict in behalf of appellee and the circuit court having overruled appellant's second motion for a new trial, he has appealed.

The grounds urged for a reversal are: First, that the circuit court erred in permitting incompetent evidence to go to the jury over his objection; second, that the verdict of the jury and the judgment of the court were contrary to law and not sustained by the evidence.

The evidence complained of is that of appellee's manager, W. F. Paxton, with respect to the settlement made by him for appellee with the trustees in bankruptcy of Hiram Blow & Company; and particularly that part of his testimony as to the production at that time of the draft and its payment by appellee. The contention as to the incompetency of this evidence rests upon the theory that the writing appearing on the back of the

draft over the signature of Hiram Blow & Company, of date September 22, 1911, constituted an assignment of it to the Hiram Blow Stave Company as of that date, and there being nothing further appearing upon the draft showing its reassignment by the Hiram Blow Stave Company to Hiram Blow & Company before the former went into bankruptcy, it must be treated as the property of the Hiram Blow Stave Company when it was adjudged a bankrupt and appellant, as its trustee, came into possession of its assets; therefore, that any evidence of an act done or statement made by a trustee or any representative of Hiram Blow & Company, at the time of the settlement between them and appellee, with respect to the ownership of the draft or its inclusion in such settlement, should not have been allowed to prevent a recovery upon the draft by the assignee thereof. In support of this contention we are cited to numerous decisions holding, in effect, that, while admissions made by the holder of a negotiable instrument, before transfer thereof, are competent evidence against one to whom it is transferred after maturity, declarations made by a former holder of a negotiable instrument after it has been transferred by him are incompetent as against a subsequent holder. The defect underlying this contention is that it ignores a material part of the defense interposed by appellee's answer, which is that there was never, in fact, an actual assignment or delivery of the draft by Hiram Blow & Company to the Hiram Blow Stave Company, but that the indorsement on the instrument, by which it is claimed it was assigned, was fraudulently made and therefore never transferred the title to the draft to the Hiram Blow Stave Company. If there was any evidence introduced on the trial that conduced to support this defense, it should have gone to the jury as well as the evidence of payment, that they might determine whether the draft, at the time of the settlement in question, was the property of the trustees in bankruptcy of Hiram Blow & Company because owned by that company at the time it was adjudged a bankrupt; and if so, whether it was taken into account in the settlement and then paid. In other words, appellee made the defense that the draft was never the property of the Hiram Blow Stave Company, but that the title thereto continued and remained in Hiram Blow & Company until it was adjudged a bankrupt, by virtue of which adjudication it passed to its trustees, with

whom the settlement for appellee was made. On this view of the case the authorities relied on by appellant are not in the way of appellee's defense.

It appears from the testimony of Paxton, appellee's manager, that at the time of the settlement made by him for appellee with the trustees in bankruptcy of Hiram Blow & Company the draft of $902.30 was in the possession of the trustees in bankruptcy of that company, and was then produced by Charles A. McQuay, who had been cashier and treasurer of Hiram Blow & Company and was admittedly acting in that capacity for its trustees in bankruptcy at the time of the settlement and in charge of the books and accounts that had formerly belonged to the bankrupt partnership. According to the testimony of Paxton, during the settlement McQuay, in the presence of H. B. Carter, one of the trustees of Hiram Blow & Company, produced the draft of $902.30 and in doing so said: "We have this on hand and were unable to use it, and we are mighty glad of it because you had a mighty hard time down there and anything that helps you in this matter we are glad to see." In addition, Paxton testified that a writing was used in that settlement by the trustees of Hiram Blow & Company containing a detailed statement of the various items of indebtedness owing by appellee to Hiram Blow & Company, the last item in which statement was the draft in question; and that the entire indebtedness, including this draft, was paid and discharged by appellee in that settlement. A copy of this paper was identified and made a part of the testimony of Paxton, and we do not find in the record that its genuineness or correctness is denied or questioned by any other witness testifying in the case.

There was, then, evidence on the trial, furnished by the testimony of Paxton, supported by the paper referred to, that the trustees of Hiram Blow & Company were in possession and claiming to be the owners of the draft at the time of the settlement, and that the draft was an item of indebtedness from appellee to Hiram Blow & Company included in that settlement and then paid, along with all other items of indebtedness owing to that company by it. If, as thus shown by the evidence in appellee's behalf, the trustees in bankruptcy of Hiram Blow & Company were, at the time of their settlement with appellee, in possession of the draft, represented that Hiram Blow & Company had been unable to use it and included

it in the statement of appellee's indebtedness to that company, which was then discharged, the jury had the right to conclude that such possession of the draft by the trustees and its inclusion in the settlement made by them with appellee, conduced to prove their ownership of it and sustain the averment of the answer that the alleged assignment of the draft by Hiram Blow & Company to the Hiram Blow Stave Company was a fraudulent device on the part of Hiram Blow & Company to compel its payment by appellee the second time.

It is true that one of the trustees, H. B. Carter, and Charles A. McQuay both testified that the draft of $902.30 was not included in the settlement made by the trustees of Hiram Blow & Company with appellee; and also testified that it had, as of September 22, 1911, been assigned by Hiram Blow & Company to the Hiram Blow Stave Company, but we do not find from the testimony of either of them any specific denial of what Paxton said as to McQuay's producing the draft at the time of the settlement and what he then said with reference to the inability of Hiram Blow & Company to use it. It is further to be remarked that the assignment appearing on the draft above the signature of Hiram Blow & Company, gives support to the testimony of Carter and McQuay that it had been assigned by Hiram Blow & Company to the Hiram Blow Stave Company as of the date mentioned in the assignment. But this support is no greater than that given the testimony of Paxton, as to the production at the settlement of the draft by McQuay and its inclusion in the settlement, by the paper furnished Paxton by the trustees of the latter.

We find in the deposition of H. B. Carter certain statements with reference to the business methods of Hiram Blow & Company and the Hiram Blow Stave Company which may serve to explain the object of the assignment of the draft by the former to the latter. Carter had been connected with both concerns before their bankruptcy, and, according to his testimony, the partnership of Hiram Blow & Company was all the time largely indebted to the Hiram Blow Stave Company, and it was the custom between them for Hiram Blow & Company to assign and turn over to the Hiram Blow Stave Company its drafts to be discounted by the latter wherever it had sufficient credit for that purpose; that an attempt was made by the Hiram Blow Stave Company to discount the draft sued on and others pursuant to this

method, but being unable to do so it returned this draft
to the office at Nashville occupied by Hiram Blow &
Company and the Hiram Blow Stave Company jointly.
While the testimony of Carter does not go to the extent
of saying that upon the failure of the Hiram Blow Stave
Company to discount the draft it was returned to Hiram
Blow & Company, that such was probably the case is
shown by the possession of the draft at the time of the
settlement by McQuay, cashier and bookkeeper of the
trustees in bankruptcy of Hiram Blow & Co., and his
statement, made at the time of producing it, that Hiram
Blow & Company had been unable to use it, for which
reason it was charged to appellee and accounted for in
the settlement then made. Moreover, the paper showing
appellee's indebtedness to Hiram Blow & Company con-
tains a list of several other drafts drawn on appellee by
Hiram Blow & Company and accepted by it, which, after
being assigned to the Hiram Blow Stave Company by
Hiram Blow & Company, were returned to that company
by the Hiram Blow Stave Company.

The fact that all the indebtedness due Hiram Blow
& Company from appellee was discharged by the terms
of the settlement made between the latter and the trus-
tees of the former January 26, 1912, is not denied by ap-
pellant or controverted by the testimony of Carter or
McQuay. The contradiction of appellee's witness Pax-
ton by Carter and McQuay is as to the ownership of the
draft at the time of the settlement, and whether it was
then paid by appellee. The testimony of Paxton, sup-
ported by McQuay's production of the draft at the set-
tlement and the paper then furnished him by the trus-
tees, being to the effect that the draft belonged to the
trustees in bankruptcy of Hiram Blow & Company was
charged to and paid by appellee in the settlement; and
that of Carter and McQuay that it was, at the time of the
settlement, the property of the trustee in bankruptcy of
the Hiram Blow Stave Company and was not paid by
appellee at that time or at all. It was, however, the
province of the jury to accept the testimony of Paxton
and reject that of Carter and McQuay, and this having
been done by two juries we are not disposed in the light
of the record presented to question the correctness of
either verdict or to disturb the one last returned.

In view of the character of the defense interposed
there is no ground for our holding that the trial court
erred in admitting the testimony of Paxton as to what

was said and done by Carter and McQuay as representatives of Hiram Blow & Company, with respect to the draft sued on, at the time of the settlement and when they were in possession of the draft. The issues presented by the pleadings and proof were fairly submitted to the jury by the instructions of the court, which were as follows:

"Instruction No. 1  You will find for the plaintiff in the sum of $902.30 with interest from December 21, 1911, unless you shall believe from the evidence that the draft sued on and in controversy in this case was in possession of the trustees of Hiram Blow & Company, and they were the owners thereof at the time defendant, Paducah Cooperage Company, through W. F. Paxton, made a settlement of the difference between said Paducah Cooperage Company and Hiram Blow & Company, and that after said settlement said draft was fraudulently transferred or delivered by said trustee, or by his authority, to the Hiram Blow Stave Company, in which event and if you shall so believe, then the law is for the defendant and you will so find. .

"Instruction No. 2.   But if you believe from the evidence that said draft was in good faith assigned and transferred to Hiram Blow Stave Company for value and in good faith, before said settlement was made, and that said Hiram Blow Stave Company, or its trustee in bankruptcy, was then the owner of said draft, then you cannot find for the defendant, but should find for the plaintiff."

Judgment affirmed.